UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ASHLEE TUREK,

       Plaintiff,

v.                                                  Case No. 8:24-cv-01074-AEP

FRANK J. BISIGNANO,
Commissioner of Social Security,[1]

       Defendant.

_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 274–277). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 99–103, 113–116). Plaintiff then requested

---

[1] Frank J. Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Frank J. Bisignano should be substituted as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

an administrative hearing (Tr. 123–124). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 10). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7–23).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1988, claimed disability beginning July 10, 2020 (Tr. 10, 21). Plaintiff completed two years of college (Tr. 57). Plaintiff's past relevant work experience included work as receptionist and waitress (Tr. 57). Plaintiff alleged disability due to anxiety, depression, post-traumatic stress disorder, a recent miscarriage, trauma from losing her parents, and endometriosis (Tr. 322). During the hearing, Plaintiff further alleged neck and back impairments and hand tremors (Tr. 60, 62–63, 67).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since July 10, 2020, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: disorders of the skeletal spine, depression/bipolar disorder, and anxiety disorder (Tr. 12). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment

or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except she could lift twenty pounds occasionally and ten pounds occasionally; sit for six hours in an eight-hour workday; and stand and/or walk for six hours in an eight-hour workday (Tr. 15). The ALJ also determined that Plaintiff can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds; stoop, kneel, crouch and crawl occasionally; never work at unprotected heights, never moving mechanical parts; and should avoid concentrated exposure to extreme cold and work in/around vibration (Tr. 15). Plaintiff's other environmental limitations include avoiding hazards in the workplace (e.g., heights, moving/heavy machinery, etc.) (Tr. 15). The ALJ also determined that Plaintiff is able to perform simple, routine tasks, make simple work-related decisions, and interact with supervisors frequently, coworkers occasionally, and the public occasionally, but she cannot perform customer service type jobs (Tr. 15). The ALJ did note that Plaintiff is able to tolerate changes in a simple work setting (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 21). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an office helper or a marker (Tr. 22). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 23).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this

4

process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by (1) failing to consider the opinion evidence properly and (2) ignoring Plaintiff's PTSD diagnosis for the combination of impairments determination. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.    The ALJ's Consideration of the Opinion Evidence

#### Dr. Harcourt

Plaintiff argues the ALJ did not properly consider the opinion evidence of Dr. Roger Harcourt. At the request of the ALJ, Dr. Harcourt performed a physical consultative exam and a physical functional capacity evaluation of Plaintiff (Tr. 1334). Dr. Harcourt found Plaintiff has abnormal reflexes, cannot sit/stand/walk

for more than 10 minutes, and she has tremors in her right and left 1st and 2nd fingers (Tr. 1341–42). Dr. Harcourt also found that Plaintiff can occasionally lift and carry 4 pounds for 10 feet, but she has wrist pain from carpal tunnel syndrome, has tremors, and drops things frequently (*Id.*). She can occasionally use her feet (Tr. 1349). Dr. Harcourt found Plaintiff can never climb, balance, stoop, kneel, crouch, and crawl (Tr. 1350), and she can never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, pulmonary irritants, extreme temperatures, and vibrations (Tr. 1352). Plaintiff can tolerate a moderate noise level environment (Tr. 1353). The ALJ found Dr. Harcourt's opinion unpersuasive (Tr. 21). Specifically, the ALJ reasoned that although the opinion was supported by Dr. Harcourt's examination of Plaintiff, the opinion was not consistent with Dr. Harcourt's own findings or the rest of the evidence (Tr. 21). The ALJ, therefore, concluded Dr. Harcourt's findings were based on Plaintiff's subjective reporting and not on the evidence (Tr. 21).

First, Plaintiff argues the ALJ made conflicting statements about the supportability of Dr. Harcourt's opinion; and therefore, it is not clear how the ALJ considered supportability. When considering medical opinions, adjudicators do not defer to any medical opinion or prior administrative findings. 20 C.F.R. § 404.1520c(a). Rather, ALJs evaluate the persuasiveness of the medical opinion using five factors: supportability, consistency, relationship with the claimant, specialization, and other relevant factors. *Id.* § 404.1520c(c)(1)–(5). Supportability and consistency are the most important factors, so ALJs must explain how they

considered these factors in the determination or decision. *Id.* § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). The ALJ will articulate how she considered the medical opinions by explaining that a medical evaluator's own findings do not support that medical examiner's opinion *Ball v. Comm'r of Soc. Sec.*, No. 24-12496, 2025 WL 1010204, at *3 (11th Cir. Apr. 4, 2025). But there are no trigger words like "support" or "supportability" that the ALJ must use to state the weight given to medical opinions or the reasons for discounting them. *Id.*

The ALJ adequately addressed the supportability of Dr. Harcourt's opinion. The ALJ found that Dr. Harcourt's physical examination findings did not support his final functional ability opinion (Tr. 21). The ALJ highlighted that Dr. Harcourt's exam findings contradicted Dr. Harcourt's final opinion. Dr. Harcourt's exam findings indicate that Plaintiff had minimal abnormalities, negative straight leg raise tests, and no problems performing the various walk and squat tests (Tr. 1338–39). But Dr. Harcourt's final opinion significantly limited Plaintiff's sitting, standing, and walking (Tr. 1341–42). The ALJ determined this contradiction undermined Dr. Harcourt's support for his final opinion (Tr. 21). This is sufficient to demonstrate that the ALJ addressed supportability.

Plaintiff counters that Dr. Harcourt's other findings contained within his evaluation support the medical opinion (Doc. 21 at 1785). Plaintiff emphasizes the following findings: tenderness on palpitation of the paravertebral muscles of the cervical spine, left trapezius and lumbar spine; spasms of the paravertebral muscles; decreased reflexes of the left triceps, right and left knees, and right and left Achilles heel; tremors in the bilateral left 1st and 2nd fingers and decreased range of motion in the lumbar and cervical spine (Doc. 21 at 1785). While Plaintiff is correct that these findings from Dr. Harcourt's physical examination support some of the functional ability findings, these still do not address the core of the ALJ's issue with Dr. Harcourt's opinion—namely, Plaintiff's sitting, standing, and walking limitations. And still, in reviewing the Commissioner's decision, this Court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth*, 703 F.2d at 1239 (citations omitted). Therefore, on this record, the ALJ adequately explained why Dr. Harcourt's medical opinion lacked supportability.

Next, Plaintiff argues the ALJ's consistency analysis is insufficient (Doc. 21 at 1785). The "consistency" factor asks to how consistent the statement is with the evidence from other medical and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2). Again, the ALJ must explain how she analyzed consistency of a medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).

The ALJ did so here. The ALJ contrasted Dr. Harcourt's physical examination findings—including Plaintiff's minimal abnormalities during the exam, negative straight leg raise tests, no problems performing the various walk and squat tests, and no weaknesses in her hands or legs—against his functional ability determination that Plaintiff had limitations sitting, standing, and walking, as well as complete restrictions against balancing, stooping, kneeling, crouching, or crawling. Because the ALJ articulated specific inconsistencies between medical evidence and Dr. Harcourt's final opinion of Plaintiff's limitations, the ALJ conducted a sufficient consistency analysis. *See Ohneck v. Comm'r, Soc. Sec. Admin.*, No. 22-13984, 2023 WL 8946613, at *3 (11th Cir. Dec. 28, 2023) (per curiam).

Plaintiff resists the ALJ's consistency analysis with other object medical evidence. Plaintiff claims the ALJ failed to consider that Dr. Harcourt's opinion is consistent with the following objective evidence: the cervical MRI performed on October 31, 2022 (Doc. 21 at 1785–86); Dr. Mousli's opinion regarding Plaintiff's neck pain and pain and numbness in Plaintiff's hands and arms despite normal NVC and EMG studies; the CORA physical therapy notes; and the findings contained in APRN Calculitan's treatment notes at the Brain and Spine Institute (Doc. 21 at 1785–86). However, in reviewing the Commissioner's decision, this Court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth*, 703 F.2d at 1239. Instead, the Commissioner's failure to apply the correct law, or to give the reviewing court

sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). So simply put, this Court's scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson*, 284 F.3d at 1221. Plaintiff is effectively inviting this Court to reweigh the medical records and override the ALJ's initial evaluation of the record evidence. The ALJ adequately explained how Dr. Harcourt's opinion is inconsistent with his own findings or with the rest of the evidence (Tr. 21), and that is enough under this Court's review.

After discounting the supportability and consistency of Dr. Harcourt's medical opinion, the ALJ concluded that the opinion was based on Plaintiff's subjective reports and not the evidence (Tr. 21 at 1787–88). Plaintiff rejects this final conclusion as a separate argument before this Court. But Plaintiff's issue is better understood within the scope of the previously discussed supportability and consistency factors. Whether it was improper for the ALJ to conclude that Dr. Harcourt's functional ability findings were based upon Plaintiff's subjective reports does not cure the noted inconsistencies. Thus, the ALJ did not err by labeling Dr. Harcourt's opinion as based on Plaintiff's subjective reports because the ALJ provided specific discrepancies between Dr. Harcourt's opinion and the objective medical evidence during the supportability and consistency analyses.

*Dr. Austin*

Plaintiff also attacks how the ALJ explained the supportability and consistency of Dr. William Austin's opinion (Doc. 21 at 1788). First, Plaintiff contends the ALJ's mental RFC does not account for an inability to respond to usual work situations and changes in work setting (Doc. 21 at 1788). Plaintiff also claims the ALJ did not consider Dr. Austin's opinion that, "[Plaintiff's] ability to sustain employment, provide financial support for herself and provide herself with sound judgment in terms of health and safety decisions seems to be impaired. She presents with documented PTSD and depressive related symptoms" (Doc. 21 at 1788). After reviewing the record evidence, the ALJ found Dr. Austin's opinion somewhat persuasive because it was supported by his examination of Plaintiff and is generally consistent with the other evidence (Tr. 21). The ALJ elaborated that although Plaintiff clearly has judgment and comprehension issues, they are not marked (Tr. 21). The ALJ considered the fact that Plaintiff suffered a significant deterioration in mental function related to the loss of her mother and multiple miscarriages (Tr. 20). The ALJ also accounted for Plaintiff's challenges at work. The ALJ highlighted that Plaintiff clearly has judgment and comprehension issues (Tr. 21). And so, the ALJ concluded that Plaintiff's mental conditions, in combination with her pain level, limit her to performing simple, routine tasks, make

simple work-related decisions, with limited interaction with others and no customer service type jobs (Tr. 21).

In reviewing the ALJ's supportability and consistency analyses, this Court must decide if the ALJ "states with at least some measure of clarity the grounds for his or her decision." *Dubose v. Comm'r of Soc. Sec.*, No. 24-13554, 2025 WL 2529598, at *5 (11th Cir. Sept. 3, 2025) (per curiam). The ALJ's recitation of Dr. Austin's examination and analysis including her RFC finding indicate she considered and adequately explained the weight given to the medical opinion. This Court is satisfied with the ALJ's explanation of the supportability and consistency of Dr. Austin's opinion.

Plaintiff again draws this Court to other medical evidence—now, Plaintiff's Gracepoint records—to undercut the ALJ's decision (Doc. 21 at 1790). But contrary to Plaintiff's argument, the record shows the ALJ considered Plaintiff's Gracepoint records, as the ALJ specifically summarizes Plaintiff's treatment at Gracepoint on pages 9-10 of the ALJ's Findings of Fact and Conclusions of Law (Tr. 18–19). Moreover, the ALJ's findings that Dr. Austin's opinion is "generally consistent with the other evidence," and "the claimant clearly has judgment and comprehension issues," signifies that the ALJ did not merely summarize Plaintiff's Gracepoint records, but she also fully considered Plaintiff's medical records. Also, to the extent that Plaintiff is advocating for this Court to reassess the weight afforded to Plaintiff's mental health records from Gracepoint, this Court must refrain from doing so. *See Winschel*, 631 F.3d at 1178.

As to Dr. Austin's opinion, Plaintiff styles two other arguments in passing. Plaintiff claims (1) the ALJ's finding that Dr. Austin's opinion is "somewhat persuasive" is too general because it does not cite to evidence that is inconsistent with "marked" limitations in the areas of judgment and comprehension (Doc. 21 at 1788–89); and (2) the ALJ failed to consider that Plaintiff's side effects caused her noncompliance with treatment (Doc. 21 at 1790). First, so long as an ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021). Although Plaintiff contends the ALJ should have identified evidence to show that Plaintiff's limitations in the areas of judgment and comprehension were not marked, the ALJ demonstrated she considered Plaintiff's mental condition as a whole and explicitly found that Plaintiff has a significant deterioration in mental function (Tr. 20); Plaintiff has judgment and comprehension issues (Tr. 21); and Dr. Austin's opinion is consistent with other evidence (Tr. 21). Second, the ALJ did note that Plaintiff's side effects influenced her to stop taking the medication (Tr. 19–20). As part of the ALJ's summary of the medical evidence, she mentions that Plaintiff's symptoms improved when she was compliant with treatment, and she repeatedly stopped and changed her medications (Tr. 20). So the ALJ properly considered and discussed relevant findings to determine the persuasiveness of Dr. Austin's opinion.

In all, the ALJ adequately explained why she found Dr. Harcourt's opinion unpersuasive and Dr. Austin's somewhat persuasive.

**B.     The ALJ's Consideration of Plaintiff's PTSD Diagnosis**

Plaintiff argues the ALJ erred by not considering Plaintiff's PTSD diagnosis when assessing Plaintiff's combination of impairments (Doc. 21 at 1794). Plaintiff highlights several symptoms of PTSD that she claims the ALJ failed to address: flashbacks, nightmares, exaggerated startle response, severe anxiety, uncontrolled thoughts of the event, negative thoughts about oneself, trouble concentrating and with memory, feeling detached from family or friends and self-isolating, easily triggered, nightmares, cries often, hyperventilates, and irritation (Doc. 21 at 1794–96).

At the third step in the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the severity of a specified impairment in the Listing of Impairments. *Winschel*, 631 F.3d at 1178. At steps four and five, the ALJ must determine the claimant's RFC and whether, in view of his RFC and other factors, the claimant can perform any past relevant work or any other job in the national economy. *Id.* "In assessing whether a claimant is disabled at steps three through five, the ALJ must base her decision on the claimant's medical condition as a whole, which includes both severe and non-severe impairments." *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015); *see* 20 C.F.R. § 404.1545(e).

The ALJ found Plaintiff to have the following severe impairments: disorders of the skeletal spine, depression/bipolar disorder, and anxiety disorder (Tr. 12). The ALJ explained that although various mental health professionals characterized

15

Plaintiff's mental impairment in numerous ways, the name of the impairment is of no consequence (Tr. 12). The ALJ went on that she determined Plaintiff has a severe mental impairment by considering all symptoms—no matter how they were labeled—affecting Plaintiff's mental functioning (Tr. 12). An ALJ does not commit error by failing to explicitly assess a plaintiff's PTSD in combination with other impairments when: the ALJ finds other severe impairments at step two; the ALJ references the cause(s) and symptom(s) of a plaintiff's PTSD throughout his decision; the ALJ properly assesses the criteria for determining whether the plaintiff had a mental impairment at step three; and the ALJ discusses the plaintiff's mental impairments in determining RFC at step four. *See Stewart v. Comm'r, Soc. Sec. Admin.*, 746 F. App'x 851, 853–54 (11th Cir. 2018) (per curiam).

Here, the ALJ preemptively explained that although various mental health providers characterized Plaintiff's mental impairments in different ways, the moniker of the mental impairment is inconsequential, since the focus is on how all of Plaintiff's symptoms affect mental functioning (Tr. 12–13). The ALJ did not precisely identify "PTSD" as one of Plaintiff's severe impairments but referenced the causes and symptoms of Plaintiff's PTSD elsewhere in the decision. The ALJ noted Plaintiff has a history of abuse that causes flashbacks, anxiety attacks, and an inability to drive; her mother died in her arms; she has difficulty maintaining concentration; and she does not sleep well (Tr. 13). The ALJ also referenced the causes and symptoms of Plaintiff's PTSD when she noted Plaintiff has a significant

deterioration in mental function related to the loss of her mother and multiple miscarriages (Tr. 20).

Nevertheless, the ALJ adequately considered Plaintiff's overall mental health impairments and how the symptoms affect her mental functioning. In fact, the ALJ references the same symptoms that Plaintiff raises before this Court all throughout the analysis. At step two, the ALJ found Plaintiff to have other severe impairments, to wit: disorders of the skeletal spine, depression/bipolar disorder, and anxiety disorder (Tr. 12). And at step three, the ALJ properly assessed the criteria for determining whether Plaintiff had a mental impairment. The ALJ ultimately determined Plaintiff does not have an impairment or combination of impairments that meets the severity of one of the listed impairments after conducting a thorough assessment of Plaintiff's mental impairments and all symptoms affecting her mental functioning. Finally, the ALJ discussed Plaintiff's mental impairments in determining Plaintiff's RFC at step four. Particularly, after the ALJ discussed Plaintiff's treatment for her mental conditions (Tr. 18–19), the ALJ concluded Plaintiff sustained a significant deterioration in mental function (Tr. 20), and Plaintiff clearly has judgment and comprehension issues (Tr. 21). In sum, because the ALJ found other severe impairments at step two; referenced the causes and symptoms of Plaintiff's PTSD throughout the decision; properly assessed Plaintiff's mental impairment at step three; and discussed Plaintiff's mental impairment when determining RFC at step four, the ALJ's failure to explicitly refer to Plaintiff's PTSD diagnosis is not an error warranting reversal.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 26th day of September, 2025.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record